IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-02651-SKC

JOSHUA JON CORDOVA,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## OPINION AND ORDER

This case arises under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c), for review of the Commissioner of Social Security's final decision denying Joshua Cordova's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented to the magistrate judge's jurisdiction. [Dkt. 13.][1]

The Court has carefully considered the Complaint [Dkt. 1], Plaintiff's Opening and Reply Briefs [Dkts. 15 & 20], Defendant's Response and Sur-reply Briefs [Dkts. 19 & 24], the entire case file, the Social Security Administrative Record ("AR"), and applicable law. The Court AFFIRMS the Commissioner's decision for the following reasons.

---

[1] The Court uses "[Dkt. __]" to refer to specific docket entries in the CM/ECF electronic docket.

1

## A. BACKGROUND

Cordova was a 20-year-old on the alleged disability-onset date. Prior to applying for DIB, he worked part-time in Safeway's deli department, and then part-time as an assistant manager at a movie theater. He stopped working in December 2016 and applied for SSI and DIB benefits on December 15, 2016, alleging he had become disabled that month, mostly arising from his diagnosed metastatic rhabdomyosarcoma. He later amended his alleged onset date to February 2, 2017.

The matter of his claimed disability eventually went to a hearing before Administrative Law Judge Kathryn D. Burgchardt on October 18, 2018. (AR 46-75.)[2] The ALJ issued a decision denying Cordova's claims on December 17, 2018 (AR 11-30). Next, the Appeals Council denied Cordova's request for review of the ALJ's decision in August 2019, rendering the ALJ's decision the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). The Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. § 405(g).

## B. DISABILITY FRAMEWORK

A person is disabled within the meaning of the Social Security Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2).) "The mere existence of a severe impairment or

---

[2] The Court uses "(AR __)" to refer to documents from the Administrative Records.

combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Fritz v. Colvin*, 15–cv–00230–JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis original, quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled. The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) has a severe impairment; (3) has a condition which meets or equals the severity of a listed impairment; (4) can return to his or her past relevant work; and, if not, (5) could perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of proof at steps one through four; the Commissioner has the burden of proof at step five. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Impairments that meet a "listing" under the Commissioner's regulations (20 C.F.R. § Pts. 404 and 416, Subpt. P, App. 1) and a duration requirement are deemed disabling at step three with no need to proceed further in the five-step analysis. 20

C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step").[3] Between the third and fourth steps, the ALJ must assess the claimant's residual functional capacity ("RFC"). *Id*. § 404.1520(e).

As mentioned above, on December 17, 2018, the ALJ issued her decision finding Cordova was not disabled for purposes of DIB or SSI benefits. Her decision followed the five-step process mentioned above. At step one, she found Cordova had not engaged in substantial gainful employment since February 2, 2017. At step two, she found Cordova had the following severe impairments: degenerative disc disease, temporomandibular joint dysfunction, status post rhabdomyosarcoma, depression, and anxiety.[4] At step three, the ALJ found Cordova did not have an impairment (or combination of impairments) that met or medically equaled a listed impairment.

She then found he had a residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: the claimant requires work that is unskilled, with an SVP of 1 or 2, requiring routine tasks and simple decision making; he can lift or carry up to 10 pound (sic) occasionally and less than 10 pounds frequently; he can stand or walk with normal breaks for a total of two hours in an eight hour workday, and sit with normal breaks for a total

---

[3] Throughout this opinion, while the Court may cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

[4] She also found the following impairment to be nonsevere: hiatal hernia; gastroesophageal reflux disease/Barrett's esophagus; history of kidney stones; and history of pneumothorax that preceded the period under review. While the AlJ determined these impairments to be nonsevere, she nevertheless considered them in her assessment of Cordova's residual functional capacity. (AR 14)

4

>of six hours in an eight hour workday; he can perform pushing and pulling motions with the upper and lower extremities, within the weight restrictions given; he should not climb any ladders, ropes, or scaffolds on the job, and can only climb ramps and stairs occasionally; he would require a sit/stand option while at the work station, meaning the claimant could sit or stand every thirty minutes for comfort while performing his assigned duties. He should avoid unprotected heights and moving machinery.

(AR 17.)

At step four, the ALJ concluded Cordova was unable to perform his past relevant work. However, she found there were other jobs "that exist in significant numbers in the national economy" Cordova could perform, including hand painter/stainer, document specialist, and telephone quotation clerk. (AR 28-29.) Because there are a significant number of jobs Cordova could perform, the ALJ found he did not meet the definition of "disabled" for purposes of DIB or SSI.

### C. STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the Court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The Court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

5

*Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## D. ANALYSIS

Cordova raises these issues: (1) the ALJ erred by failing to consider as severe his history of opioid and substance abuse at Step Two; (2) the ALJ erred in failing to consider the opioid addiction history as a medically determinable impairment in formulating the RFC; (3) the ALJ throughout the RFC analysis violated SSA regulations in failing to accord controlling or at least deferential weight to the opinions of treating sources concerning the severity of Cordova's physical and mental impairments; (4) the ALJ erred in not supplementing the record; and (5) the ALJ erred in failing to find Cordova disabled.[5]

---

[5] To the extent Cordova raised additional or new issues in his Reply Brief, those issues are waived for failing to raise them in the Opening Brief. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue."); *Gasiorowski v. Colvin*, 12-CV-03068-WYD, 2014 WL 1292871, at *2 (D. Colo. Mar. 31, 2014) ("It is true that

1.     **The ALJ's Consideration of Cordova's Substance Abuse History**

Cordova argues the ALJ erred by failing to consider his history of opioid and substance abuse as "severe" at Step Two, and also by failing to consider his history of opioid addiction as a medically determinable impairment in formulating the RFC. Defendant argues Cordova fails to identify any record evidence showing his history of substance abuse and addiction caused any functional limitations, and further, the ALJ considered Cordova's history of opioid addiction throughout the Decision, spending an entire page of the RFC analysis discussing Cordova's drug abuse, treatment, and withdrawal.

An impairment is "severe" at Step Two if it significantly limits a person's physical or mental ability to do basic work activities such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, understanding simple instructions, use of judgment, etc. 20 C.F.R. §§ 404.1522 and 416.920(c). While the Tenth Circuit has held Step Two only requires a *de minimis* showing of impairment, a plaintiff still "must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). "[I]f the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in

---

courts decline to consider arguments which are improperly developed or presented in an opening brief.").

substantial gainful activity." *Id.* (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

The Decision reflects the ALJ thoroughly and thoughtfully considered Cordova's history of substance abuse and opioid addiction under SSR 13-2p. She stated and concluded:

> It is agency policy that a claimant is not to be considered disabled if alcoholism or drug addiction is a contributing factor in a disability determination. If the claimant is initially found disabled, the undersigned must consider whether the claimant would be disabled if he stopped using drugs or alcohol. If he would not be considered disabled, then the drug or alcohol abuse is "material" to a finding of disability. If he would still be disabled even if he were not using drugs or alcohol, then he is disabled. The undersigned has considered whether the claimant's history of marijuana and opiate use is germane to the disability determination, and in so doing, finds that the record evidence fails to demonstrate that the claimant's history of drug abuse constitutes a contributing factor material to the determination of disability. The undersigned finds that the claimant is not under a disability regardless of whether he used drugs or not.

(AR 16-17.) As Defendant points out, the ALJ also dedicated a full page to discussing medical records involving Cordova's substance abuse history. (AR 24.) Her findings note Cordova's hearing testimony that he "last used opioids about five months ago after he detoxed at home." (AR 18, 57.) Moreover, the record contains an October 8, 2018 letter from Cordova's treating physician, Dr. Jimenez, who wrote Cordova's opioid dependence was "in remission," Cordova had "withdrawn off the opiates successfully," and he was "now drug free" other than his medical marijuana use. (AR 1681.)

There is substantial evidence in the record supporting the ALJ's decision not to characterize Cordova's substance abuse history as severe. *Montano v. Saul*, No. 20-

CV-00160-KLM, 2021 WL 1169982, at *6 (D. Colo. Mar. 29, 2021) ("Simply stated, Plaintiff has failed to show any functional limitations should have been included in the ALJ's RFC based on Plaintiff's history of substance abuse."); *Martinez v. Colvin*, No. CV 14-1358-JWL, 2016 WL 344728, at *4 (D. Kan. Jan. 28, 2016) ("The ALJ acknowledged that Plaintiff's substance abuse ceased in 2008—he specifically stated that, after 2008, substance use was no longer a contributing factor material to the determination of disability 'due to cessation of substance abuse.'"). The ALJ properly considered whether Cordova's history of substance abuse was germane to the disability determination, and properly considered whether Cordova was under a disability regardless of whether he used drugs. (AR 16-17.) The Court finds no error here.

For the same reasons, substantial evidence in the record supports the ALJ's failure to consider Cordova's prior substance abuse as a medically determinable impairment. *See e.g., Hodges v. Colvin*, 568 F. App'x 639, 641 (10th Cir. 2014) (affirming ALJ's RFC determination where objective medical evidence did not support plaintiff's subjective complaints and where plaintiff failed to identify medical evidence indicating his RFC should be more limited); *Montano,* 2021 WL 1169982, at *6 ("Simply stated, Plaintiff has failed to show any functional limitations should have been included in the ALJ's RFC based on Plaintiff's history of substance abuse.").

## 2. Weight the ALJ Accorded Dr. Jimenez's Treating Source Opinions

Cordova argues the ALJ violated SSA regulations in failing to accord controlling or at least deferential weight to the opinions of Dr. Jimenez. The ALJ gave

9

differing weights to different opinions offered by Dr. Jimenez. For example, she gave "some weight' to his treating source statement dated October 8, 2018; "little weight" to his opinions in a Med-9 form dated February 2, 2017; and "partial weight" to his opinions rendered on February 20, 2018.

When considering the opinions of a treating source, the ALJ must "give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). In the Tenth Circuit, courts require a level of specificity sufficient "to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. In the absence of such articulation, the Court cannot determine whether there is sufficient evidence to support the ALJ's conclusions or if the ALJ even applied the appropriate legal standard. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). There can be no meaningful review absent express findings explaining the weight assigned to the treating physician's opinions. *Watkins*, 350 F.3d at 1301.

The opinions of a treating source are entitled to controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in the record." 20 C.F.R. § 404.1527(c)(2); *see also Watkins*, 350 F.3d at 1300. Further, they cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. 20 C.F.R. § 404.1527(c)(2). Good cause may be found when an opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*,

10

816 F.2d 508, 513 (10th Cir. 1987). Under the regulation, even when a treating source is not given controlling weight, "[t]reating source medical opinions are . . . entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p). The Tenth Circuit has set forth those factors as

> (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1301 (internal quotation marks omitted). Although the ALJ's decision need not include an explicit discussion of each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the record must reflect that the ALJ considered every factor in the weight calculation. *See* 20 C.F.R. § 404.1527(c)(2) ("[W]e apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion."); SSR 96–2p, 1996 WL 374188, at *4 ("Treating source medical opinions . . . must be weighed using *all* of the factors provided . . . ." (emphasis added)).

Cordova argues "[t]he only reason advanced by the ALJ for rejecting Dr. Jimenez's opinion was vagueness in that he failed to assess function-by-function limitations tied to objective medical findings." But this argument is belied by the ALJ's decision. A simple review of her decision shows she advanced many reasons for the weights she assigned Dr. Jimenez's opinions. For example, she gave "some

11

weight" to the October 8, 2018 statement because she found the "opinion vague, in that he failed to assess function-by-function limitations tied to objective medical findings" *and* because Dr. Jimenez "is not a vocational expert." (AR 25.) Nevertheless she noted "the longitudinal history of treatment provided by Dr. Jimenez, and therefore, gave this opinion some weight." (*Id.*) She gave his February 2, 2017 opinion "little weight" for his failure to assess function-by-function limitations *and* because that opinion was "inconsistent with his determination that the claimant's rhabdomyosarcoma was in remission and had been since 2012[.]" (AR 26.) And finally, she gave his February 20, 2018 opinion "partial weight" because she found a portion of the opinion consistent with the evidence and the other portion as invading the an issue reserved for the Commissioner.

The Court finds the ALJ followed the applicable standards when assigning weight to Dr. Jimenez's opinions, and she did not err in failing to accord controlling or deferential weight to them. She thoroughly explained the reasons for the weight she assigned, and those reasons constitute sufficient good cause for the assigned weights. Those reasons are all appropriate considerations for not assigning controlling weight to a treating source opinion. And while she did not separately discuss the six *Watkins* factors, the Decision reflects the ALJ considered each of those factors in weighing Dr. Jimenez's opinions. (AR 25-26.)

### 3.     Whether the ALJ Erred in not Supplementing the Record

Cordova argues the ALJ erred in not supplementing the record because, in a June 19, 2017 report, Dr. Madsen opined Cordova suffered from a cognitive disorder

12

and he "suggested" it would be helpful to have a WAIS-IV or a WMS-IV performed to further define Cordova's cognitive functioning. According to Cordova, the ALJ "had a duty to further develop the record in this regard."

This argument is woefully underdeveloped. Cordova uses only three sentences to argue the ALJ has this duty, cites two cases, and argues nothing further regarding how this duty applies to the circumstances of this case, or what the ALJ should have done to supplement the record. The Court need not entertain such woefully deficient arguments.

To be sure, in cases like this one where Cordova was represented by an attorney at the disability hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). There is no indication in the record that Cordova's counsel identified any issues needing further development for the ALJ to consider. Consequently, the Court concludes that the ALJ did not err by failing to supplement the record.

\* \* \*

The Court is satisfied the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Cordova was not disabled within the meaning of Titles II and XVI of the Social Security Act, and, therefore, not eligible to receive

13

benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED, and this civil action is DISMISSED, with each party to bear his or its own fees and costs.

DATED: September 28, 2021

BY THE COURT:

S. Kato Crews
U.S. Magistrate Judge